1
2
3            UNITED STATES DISTRICT COURT
4                DISTRICT OF NEVADA
5                      * * *
6  UNITED STATES OF AMERICA,              Case No. 2:14-cr-00369-GMN-PAL
7                          Plaintiff,     REPORT OF FINDINGS AND
                                          RECOMMENDATION
8        v.
                                          (Mtn to Suppress - Dkt. #15)
9  COREY SANDERS,
10                         Defendant.
11

12        Before the court is Defendant Corey Sanders' ("Sanders") Motion to Suppress Evidence

13  (Dkt. #15) which was referred to the undersigned for a report of findings and recommendation

14  pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  The court has considered the Motion, the

15  government's Response (Dkt. #16), Sanders' Reply (Dkt. #18), and evidence admitted in an

16  evidentiary hearing conducted January 26, 2015.  Brian Pugh appeared on behalf of the

17  Defendant, and Alexandra Michael appeared on behalf of the United States.

18                              **BACKGROUND**

19        Sanders is charged in an Indictment (Dkt. #1) returned November 12, 2014, with felon in

20  possession of a firearm in violation of 18 U.S.C.§ 922(g)(1) and 924(a)(2).  He made an initial

21  appearance and was appointed counsel on November 19, 2014, and detained following a

22  detention hearing.  *See* Minutes of Proceedings (Dkt. #8).

23        The charge arises out of an October 30, 2014, traffic stop by officers of the Las Vegas

24  Metropolitan Police Department ("LVMPD") near the corner of Lake Mead and Martin Luther

25  King Blvd. in Las Vegas, Nevada.  Sanders was a passenger in a green Ford Taurus which was

26  pulled over, according to the officer's report, for "obstruction of view" based on the officer's

27  observation of two air fresheners hanging from the rearview mirror.  According to the arrest

28  report, as officers Perez and Eberling approached, they recognized "a distinct smell similar to

that of marijuana emanating from the vehicle."   Sanders was removed from the vehicle and questioned by Eberling regarding drugs and firearms and a firearm was recovered from Sanders' person.

## I.   The Parties' Positions.

### A.  Sanders' Motion to Suppress.

The motion to suppress argues that the traffic stop was not based on reasonable suspicion that a traffic offense had been committed.   NRS 484D.435(1) requires that windshield and windows must be unobstructed.   The Nevada statute is "practically identical" to an Anchorage Municipal Code section the Ninth Circuit addressed in *United States v. King*, 244 F.3d 737, 739 (9th Cir. 2001).   There, Ninth Circuit concluded that the driver did not violate the code by driving with a parking placard hanging from the rearview mirror because the use of the word "upon" in the code required direct contact with the windshield and an object hanging elsewhere, even in close proximity, did not violate the code.   The court held that the officer's mistake of law did not form a basis for reasonable suspicion to initiate the traffic stop and reversed the district judge's denial of King's motion to suppress.

Sanders acknowledges that the Supreme Court's recent decision in *Heinen v. North Carolina*, 574 U.S. __ (Dec. 15, 2014), held that a police officer's mistake of law in making a traffic stop did not require suppression of evidence obtained from the stop if the officer's mistake of law was reasonable.   However, in *Heinen*, one of the bases for the Court's determination was that the North Carolina statute the officer relied upon was subject to more than one interpretation.   In this case, by contrast, the Nevada statute is not ambiguous--having something hanging from a rearview mirror is not "upon" the windshield and is not proscribed by statute.

### B.  The Government's Opposition.

The government opposes the motion arguing that prior to the stop, the officers observed two tree air fresheners hanging from the rearview mirror that were causing an obstructed view of the driver in violation of NRS 484D.435.   The officers were also suspicious before the stop because the occupants of the vehicle drove by and did not look in the direction of the marked patrol car.   The officers pulled behind the vehicle and ran the license plate which came back to a

- 2 -

female owner.  The vehicle was operated by a male and the officers pulled the vehicle over initiating the patrol car lights.  The driver did not stop right away, but continued about a block before pulling into a parking lot area.  As the officers approached the vehicle, they observed the driver and the passenger making furtive movements back and forth with their hands and arms.  The officers also smelled marijuana coming from the vehicle.  The officers later recovered marijuana, Lortab pills and a firearm from Sanders.

The government argues that the traffic stop was supported by reasonable suspicion because the officers had specific and articulable facts to suggest that the occupants were engaged in criminal activity.  The government concedes that the language of the Nevada statute prohibiting obstructing a windshield or window is similar to the language the Ninth Circuit interpreted in the Anchorage Municipal Code in *United States v. King*.  However, the government maintains that *Heinen* "is more on point than *King*."  In *King*, the officer pulled the vehicle over after observing King driving a car with a disabled person's parking identification placard hanging from the rearview mirror which the officer did not typically associate with young persons.  The officer followed the vehicle and noticed a rental car company sticker and radioed to see if the car was stolen.  The response was negative.  The officer pulled the vehicle over without noting any additional suspicious activity.  The Ninth Circuit only considered the single factor supporting the traffic stop in finding the officer lacked reasonable suspicion to believe the driver had violated a traffic law.  By contrast in this case, there are additional factors contributing to the officers' reasonable suspicion to conduct the traffic stop.

The United States argues that in *Heinen v. North Carolina*, the Supreme Court held that when an officer makes a mistake of law in interpreting a traffic code violation during a traffic stop, suppression is not required as long as the mistake of law was reasonable.  The United States relies on *United States v. Griffin*, 109 F.3d 706, 708 (11th Cir. 1997) for the proposition that officers who smelled the odor of marijuana during a traffic stop had reasonable suspicion of criminal activity warranting an investigatory detention.  The government also argues that, even if the officers were mistaken that two items hanging from a rearview mirror were a violation of NRS 484D.435(1), the mistake was reasonable and suppression is not required.

## C.  Sanders' Reply.

Sanders' reply argues that before *Heinen* was decided, the Ninth Circuit had held that an officer's mistake of law could not support reasonable suspicion for a seizure.  *Heinen* applies an objective reasonableness test to determine whether a mistake of law supports reasonable suspicion to conduct a traffic stop.  In this case, the officers' mistake was not reasonable because the Ninth Circuit decided *King* in 2001, thirteen years prior to the stop.  *King* interpreted the Anchorage Municipal Code section which is virtually identical to the Nevada Revised Statute concluding that the code did not prohibit an object hanging from somewhere other than the windshield and windows.  Thus, the officers could not reasonably rely upon NRS 484D.435(1) to support this stop.  The Supreme Court's decision in *Heinen* concurred with the North Carolina Court of Appeals that the North Carolina statute was ambiguous and, therefore, the officer's interpretation of the law was reasonable.  In light of *King*, there is no ambiguity in NRS 484D.435(1).  Items hanging from a rearview mirror are not "upon" the windshield and the officer's mistake of law was objectively unreasonable.

Sanders also argues that the officers' observations of furtive movements and the odor of marijuana are not relevant to the motion to suppress because once the traffic stop was effected, the seizure had already occurred.  The court should therefore suppress all evidence seized from the October 30, 2014, stop.

## II.     The Evidentiary Hearing.

At the evidentiary hearing, the government called officers Ashley Perez and Justin Eberling.  The defense did not call any witnesses.  The defendant was canvassed and acknowledged he understood he had the right to testify if he wished, but could not be compelled to testify if he did not, and that his silence could not be commented on or used against him if he decided not to testify.  Sanders stated he had decided, after conferring with counsel, not to do so.

## A.  Testimony of Officer Ashley Perez.

Officer Perez testified that she is employed by LVMPD and has been assigned to the Enterprise Area Command for the past eight weeks.  Prior to that, she spent nine weeks at the Bolden Area Command, and prior to that was in the police academy in February 2014.

1    On October 30, 2014, she was on patrol with Officer Eberling and made a vehicle stop at

2    approximately 8:18 p.m.  She was driving a marked police vehicle in uniform.  She had been

3    working in the area for approximately thirty days prior to the stop.  It is an area with a lot of

4    jaywalkers and speeders.  She was stopped in the No. 3 lane at a traffic light.  She noticed the

5    occupants of a vehicle that appeared to making an effort not to look at the officers and seemed

6    not to want to come level with the patrol car.  She noticed that the vehicle had two tree air

7    fresheners hanging from the rearview mirror.  She considered the air fresheners a violation of a

8    Nevada statute which prohibits obstructing view of a highway or windshield.  She pulled behind

9    the vehicle and Officer Eberling ran the license plates.  She initiated the patrol car lights and "did

10   a chirp" to get their attention.  The plates were registered to a female driver and there were no

11   female occupants in the car.

12   It took approximately one block for the vehicle to come to a stop.  Normally, the driver

13   pulls over when he or she can.  The driver of this vehicle had multiple opportunities to pull over

14   and it "wasn't normal."  It is a violation of Nevada law to fail to yield to an emergency vehicle.

15   The car eventually pulled over into a parking lot at Lake Mead and J Street.  She pulled behind

16   the car at an angle so that it could not back up and used her overhead lights to light up the

17   vehicle so that the occupants could not see out and the officers could see in for officer safety.

18   Both officers approached the vehicle.  The driver rolled the window down.  She

19   approached the driver's side while Eberling approached the passenger side.  She noticed a strong

20   odor of marijuana coming from the vehicle and asked the driver to step out.  While approaching

21   the vehicle, she also saw "small shuffling motions" called furtive gestures.  She focused on the

22   driver.  She observed some shuffling as if something was being put somewhere or passed.  She

23   did not see what it was and could not see the occupants' hands.  She asked the driver to step out

24   of the vehicle because of the furtive motions and odor of marijuana "to prevent anything

25   negative" from occurring for officer safety.  She asked the driver for consent to search his person

26   which he gave her.  She felt a small bag in his left sock and retrieved a small bag of marijuana

27   from him.

28   / / /

1    Officer Eberling called out a "code red" on the radio meaning the officers had something

2    serious.  By this time, she had already handcuffed the driver.  Eberling was dealing with the

3    Defendant.  She did not issue citations for the traffic stop because of other facts and

4    circumstances, *i.e.,* the officers had uncovered evidence of more serious violations than a traffic

5    violation.

6    On cross-examination, Perez testified that she was the driver of the patrol car.  She

7    identified Sanders in open court as the passenger in the front seat of the vehicle she stopped.  The

8    No. 3 lane is the far-right lane.  The vehicle that was stopped was initially in the middle lane.

9    While the patrol vehicle was stopped at the traffic light, the occupants of the vehicle did not

10   come up level to the patrol car.  When the light turned green, both the patrol car and the

11   Defendant's vehicle started moving.  The Defendant's vehicle moved ahead enough to allow her

12   to get behind.  She estimated it took approximately one minute to pull behind the Defendant's

13   vehicle, but was not sure.  She activated the lights on the patrol car after Eberling had enough

14   time to run the license plate on the vehicle.  She was concerned because the occupants of the

15   vehicle would not look at the officers.  This is not common.

16   She also testified that the only reason she pulled the vehicle over was because of the air

17   fresheners she observed hanging from the rearview mirror.  She has read the Nevada statute

18   regarding obstructed view.  She regarded the air fresheners as an obstruction which violated NRS

19   484B.163.   Defense counsel read that statute to the officer who agreed that it related to

20   obstructions caused by occupants of the vehicle and was not the applicable statute.

21   On redirect, Perez testified that the occupants delay in pulling over could also be a

22   violation of the Nevada traffic statute prohibiting drivers from evading a police officer as well as

23   failing to yield to an emergency vehicle.

24   In response to questioning by the court, Officer Perez testified that the vehicle traveled

25   the length of approximately two football fields before pulling over and that there were a number

26   of areas where the car could have safely pulled over before it did.

27   / / /

28   / / /

- 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.  Testimony of Officer Justin Eberling.

Officer Eberling is a patrol officer for LVMPD assigned to the Bolden Area Command. He has been a police officer for nine-and-a-half years.  He was on duty with Perez on October 30, 2014, at approximately 8:18 p.m., in the area of Lake Mead and Martin Luther King heading back towards the police station.  Perez observed a Ford Taurus in the No. 2 lane.  Perez observed two males who weren't looking at her and a couple of air fresheners hanging from the rearview mirror.  She told Eberling she was going to stop the vehicle.  The area where the stop occurred is an area of high gang violence and narcotics trafficking.  It is also an area heavy with pedestrian traffic, so traffic enforcement is encouraged.  There have been a number of gang shootings in this area.  Additionally, at the end of 2013, and in early-2014, there were a couple of traffic fatalities. Citizens in the area were concerned, the speed limit was lowered from 45 m.p.h. to 35 m.p.h. and well-lit pedestrian crosswalks were added.  It is an area where officers have to watch out for pedestrians who don't always follow the law or cross in crosswalks.

The vehicle was stopped for items hanging from the rearview mirror that obstructed the driver's view.  Eberling ran a records check of the license plate and found it was registered to a female.  Perez attempted to conduct a traffic stop.  She activated the patrol car lights and siren. The car did not immediately yield, although it did move over to the No. 3 lane.  The car did not stop until the intersection of Lake Mead and J Street.  He did not know how far in distance it was, but said it was an additional traffic light.  The vehicle could have pulled over safely earlier at a CVS parking lot and a bus stop area.  Failure to yield to an emergency vehicle and failure to stop or evading a police officer are violations of Nevada law.  There was ample time for this vehicle to pull over.

Officer Perez activated the patrol car's "takedown lights" when the vehicle pulled over. He could see the two occupants moving around quite a bit.  They appeared trying to move to hide something.  When a car fails to stop immediately, it is "put out on the radio" because in Eberling's experience, it is common for people under these circumstances to get out of the vehicle and try and run.  Both occupants of the vehicle were hunched over, bending down.  In

/ / /

1    Officer Eberling's experience, typically when you stop people, they don't move around.  They

2    may be nervous and they want to sit still.

3         Eberling approached the passenger's side and immediately noticed an overwhelming odor

4    of marijuana.  It smelled fresh.  He asked the passenger questions about where he had been and

5    where he was going.   He also asked the passenger if he was willing to hand over his

6    identification.  Eberling mostly let Perez engage the driver and acted as a cover officer.  Eberling

7    kept his eyes on Sanders.  Sanders was compliant.

8         Perez said she smelled marijuana and wanted to remove the driver from the vehicle,

9    which she did.  After she took the driver to the front of the patrol car, Sanders' cell phone rang.

10   Eberling heard Sanders say something to the effect "I'm going to go away for a long time."

11   Eberling told the driver to hang up because he had questions for him.   Sanders complied.

12   Eberling asked Sanders where the dope was and Sanders pointed to his vest pocket.  Eberling

13   then asked if Sanders had a "burner" which is a street phrase for a gun or stolen gun.  Sanders

14   said he did.  Eberling told Sanders to put his hands on the ceiling of the vehicle.  Sanders

15   complied and rocked over to his left hip exposing the base plate of a gun in his pants pocket.  It

16   is common for police officers to ask individuals with whom they have contact if they have

17   narcotics or weapons.  It is a question "we always ask."

18        On cross-examination, Eberling testified that before the stop Perez stated "these guys

19   aren't looking at me" and that she had seen the trees.  Perez told Eberling that she was going to

20   stop the vehicle.  Eberling saw the occupants of the vehicle from Stella Lake [phonetic] to Lake

21   Mead.  When Perez decided she was going to stop the vehicle she activated the patrol car lights.

22   The occupants of the vehicle moved over to the No. 3 lane, but missed a couple of opportunities

23   to stop.  Even if they were concerned about how safe it was, there were at least two safe places to

24   stop earlier than they did.  Eberling acknowledged that one of the first things officers ask for is

25   license and registration which are often kept in glove boxes.  Reaching to get them could be

26   considered furtive movements depending on how fast the occupant is moving.  If Eberling

27   notices someone moving inside a car he's stopping "I'll keep my eyes on you."

28   / / /

1    Eberling is aware that the Nevada statute prohibiting obstructing view uses the word

2    "upon."  The only other traffic infraction involving obstructions deals with what passengers are

3    doing, how many passengers are inside the vehicle or if something is distracting a driver like a

4    phone.

5    On redirect, Eberling testified that he believed the trees hanging on a rearview mirror

6    violated the statute because the rearview is attached to the windshield and having anything

7    dangling from the rearview is an unsafe act and a safety concern.

8    In response to questions from the court, Officer Eberling testified that the two air

9    fresheners were normal size, like one would get at a car wash.  In his view, attaching air

10   fresheners to a rearview mirror violates the statute because they could obstruct view and air

11   fresheners should be attached elsewhere.

12                                        **DISCUSSION**

13   The Fourth Amendment secures "the right of the people to be secure in their persons,

14   houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.

15   The Fourth Amendment protects reasonable and legitimate expectations of privacy.  *Katz v.*

16   *United States*, 389 U.S. 347 (1967).  The Fourth Amendment protects "people, not places."  *Id.*

17   Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be

18   suppressed as the "fruit of the poisonous tree."  *Wong Sun v. United States*, 371 U.S. 471 (1963).

19        **I.       The Traffic Stop.**

20   A temporary detention of individuals during a traffic stop is a seizure within the meaning

21   of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-810 (1996).  Because a

22   traffic stop for a suspected violation of law is a seizure of the occupants of the vehicle, it "must

23   be conducted in accordance with the Fourth Amendment."  *Heien v. North Carolina*, 574 U.S. __

24   135 S.Ct. 530, 536 (2014).  The Fourth Amendment requires only reasonable suspicion to justify

25   a traffic stop.  *Id.*  Reasonable suspicion is defined as "a particularized and objective basis for

26   suspecting the particular person stopped of breaking the law."  *Id., citing Prado Navarette v.*

27   *California*, 572 U.S. __ 134 S.Ct. 1683, 1687-88 (internal quotation marks omitted).  The Ninth

28   Circuit has also defined reasonable suspicion as "specific, articulable facts which, together with

objective and reasonable inferences, form the bases for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000). Reasonable suspicion is based on the totality of the circumstances. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*). An officer evaluating whether reasonable suspicion is present is entitled to draw on his or her "own experience and specialized training to make inferences from and deductions about the cumulative information available." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Even reasonable suspicion of a parking violation can justify an investigatory stop of a vehicle. *United States v. Choudhry*, 461 F.3d 1097, 1101 (9th Cir. 2006). In *Choudhry,* the Ninth Circuit applied *Whren* holding that as long as officers had reasonable suspicion to believe a violation of a traffic code had occurred, the stop was reasonable under the Fourth Amendment and evidence recovered from a traffic stop is admissible. *Id,* at 1102. A traffic violation is sufficient to justify an investigatory stop, even if (i) the violation was merely pretextual; *Id. at* 811-12, (ii) the stop departed from the regular practice of a particular precinct; *Id.* at 814-15, or (iii) the violation was common and insignificant, *Id.* at 818-19.

Both officers testified at the evidentiary hearing that the vehicle in which Sanders was a passenger was pulled over for a violation of a Nevada traffic law which prohibits obstruction of a windshield. Both officers testified that the obstruction which they believed violated the statute was the two tree air fresheners hanging from the rearview mirror. The government's opposition to the motion to suppress argues there were "additional factors" contributing to the officers' reasonable suspicion. These additional factors were (1) the occupants of the green Taurus did not look in the direction of the marked patrol car, and (2) the driver did not seem to want to pull even with the patrol car at the light. The government also argues that once the vehicle was stopped, the officers had reasonable suspicion to believe the occupants were engaged in criminal activity because both officers observed the occupants making furtive gestures after the stop, and as they approached the vehicle, smelled the odor of marijuana emanating from it.

The officers' observation of the occupants making furtive movements and detecting the odor of marijuana as they approached the vehicle cannot support reasonable suspicion to conduct

1   the stop.  The traffic stop itself was a seizure within the meaning of the Fourth Amendment

2   which must be supported by a particularized and objective basis for suspecting that the occupants

3   who were stopped were breaking the law.  According to the officers, this vehicle was stopped

4   because both officers believed displaying two tree air fresheners from the rearview mirror was a

5   violation of a Nevada traffic law.  The court finds that the testimony that the occupants were not

6   looking in the officers' direction, and the driver did not pull even with the patrol car at the traffic

7   light, simply do not support a finding of reasonable suspicion alone or in combination with the

8   suspected traffic infraction.  Neither officer testified about the length of time the occupants of the

9   green Taurus did not look in the officers' direction. No testimony described how close or far the

10  green Taurus was to the patrol car at the light to support Officer Perez's conclusion that the

11  driver "seemed not to want to come level with the patrol car."

12        At the evidentiary hearing, government counsel elicited testimony from both officers that

13  the driver of the vehicle did not pull over as soon as it could have which could constitute a

14  violation of a Nevada statute requiring a vehicle to yield to an emergency vehicle, and a statute

15  that prohibits evading a police officer.  Government counsel argued that the failure of the driver

16  to pull over sooner than it did also contributed to the officers' reasonable suspicion to conduct

17  this traffic stop.  However, the testimony in this case was clear that when the light turned green,

18  both the patrol car and the vehicle in which Sanders was a passenger moved forward and Officer

19  Perez pulled behind the vehicle following a short distance for about a minute while Officer

20  Eberling ran the license plate.  The records check indicated that the vehicle was registered to a

21  female.  Neither officer found it suspicious that the vehicle was registered to a female, but no

22  female was in the vehicle.

23        Both officers testified that Perez announced she was going to pull the vehicle over for

24  displaying two air fresheners.  She activated her patrol lights.  Perez testified that she also

25  "chirped" her siren to get the attention of the driver.  Both officers testified the driver

26  immediately pulled over to the far right-hand lane.  Although both officers testified that the

27  driver could have pulled over earlier than it did, the driver pulled over in a parking lot a short

28  time and distance from when Officer Perez initiated her patrol lights and "chirped" the siren to

get the driver's attention.  Officer Perez testified the vehicle stopped after about a block.  Officer Eberling testified that the vehicle traveled the length of approximately two football fields before pulling over.  The court finds that the government has not established that the driver of the vehicle violated a Nevada statute prohibiting evading a police officer, or failing to yield to an emergency vehicle based on the testimony in this record.[1]

The lawfulness of this stop boils down to  whether the officers had reasonable suspicion to believe that hanging two tree air fresheners from the rearview mirror violated NRS 484D.435(1).

## II.     NRS 484D.435(1).

Both officers testified that the stop was conducted for violation of a Nevada statute prohibiting a windshield and window from having an obstructed view.  The statute the government relies on to establish reasonable suspicion for the stop is NRS 484D.435(1) which provides:

> Windshield and windows must be unobstructed.
>
> 1.  A person shall not drive any motor vehicle with any sign, poster or other non-transparent material upon the front windshield, side wings, or side or rear windows of such vehicle which obstructs the driver's clear view of the highway or any intersecting highway.

The government and both officers claim that two normal size tree air fresheners hanging from a rearview mirror violate this statute.  Sanders claims it does not.  The Nevada Supreme Court has not construed the statute.  However, the Ninth Circuit construed an Anchorage Municipal Code section ("AMC") which uses virtually identical language.  In *United States v. King*, 244 F.3d 736 (9th Cir. 2001) the Ninth Circuit examined AMC § 9.36.040(d) which provides:

---

[1] Neither officer identified a Nevada statute prohibiting evading a police officer or failing to yield to an emergency vehicle.  Neither the government's opposition, nor argument of counsel following the hearing cited a statute.  NRS 484B.550 governs a stop required upon a signal of a police officer.  It provides: "1. Except as otherwise provided in this section, the driver of a motor vehicle who willfully fails or refuses to bring a vehicle to a stop, or who otherwise flees or attempts to elude a peace officer in a readily identifiable vehicle of any police department or regulatory agency, when given a signal to bring the vehicle to a stop is guilty of a misdemeanor. 2. The signal by the police officer described in subsection 1 must be by flashing red lamp and siren."

No person may drive any motor vehicle with any sign, poster, non-transparent material or an accumulation of show, ice or frost upon the front windshield side wings, or side rear windows of such vehicle which material obstructs, obscures, or impairs the driver's clear view of the street or any intersecting street.

The driver of the vehicle in *King* was pulled over for driving a car with a disabled person's parking identification placard hanging from the car's rearview mirror.   At an evidentiary on the motion to suppress, the officer testified he pulled the driver over for three reasons.   First, because the officer did not associate the disabled parking placard with younger people, which made him suspicious that the permit may have been stolen.   Second, the officer wanted to advise the driver that the law prohibited driving with a placard hanging from the rearview mirror.   Third, despite having police dispatch run the car and determine that it had not reported stolen, the officer was suspicious that it may have been stolen.   As the officer approached the stopped vehicle, he noticed that King was not wearing a seatbelt.   A records check revealed that King had an outstanding warrant.   The officer called for backup, conducted a pat down search, found crack cocaine in King's pocket and arrested him.

King was charged with possession of crack cocaine and filed a motion to suppress asserting the traffic stop was not supported by reasonable suspicion.   The district judge denied the motion to suppress reasoning that the parking placard hanging from the rearview mirror was in direct contact with the windshield which violated the statute.   The Ninth Circuit reversed holding that because the ordinance used the word "upon" the front windshield, violation of the statute required placement of an object on or in direct contact with the windshield.   244 F.3d at 740.   The Ninth Circuit interpreted "upon" to require direct contact because this interpretation was consistent with common dictionary definitions of the word "upon".   *Id.*   It also found that the placement and context of the word "upon" within the statute indicated it did not prohibit placement of an item on the rearview mirror.   *Id.*   The court concluded that "an object hanging elsewhere, even if in close proximity, does not trigger a violation of the ordinance."   *Id.*

The Ninth Circuit contrasted this code provision to statutes from other jurisdictions which explicitly prohibit obstructing items that hang from rearview mirrors noting that the "proliferation of hanging dice, air fresheners, and a panoply of other personalized gadgets may

well be the impetus for these laws." *Id*. The Ninth Circuit reasoned that statutes which explicitly prohibit obstructing items hanging from a rearview mirror illustrate that if a state "intended to prohibit items hanging from a rearview mirror, but not touching the windshield, the local legislative body could have expressed its intent through explicit language." *Id.* at 741. The Ninth Circuit held that although the officer acted reasonably, and his interpretation of the traffic law was reasonable, he was mistaken that the placard hanging from the rearview mirror violated the law. *King* also held that the officer's mistaken belief could not form a basis for reasonable suspicion to initiate the stop. *Id.* It therefore reversed the district court's denial of King's motion to suppress.

Although the Nevada Supreme Court has not interpreted the statute before the court, the Ninth Circuit has interpreted the AMC statute which is the virtually identical in all material respects. In *King*, the Ninth Circuit squarely held that a statute remarkably similar to NRS 484D.435(1) was not violated by an object hanging from the rearview mirror because the ordinance's use of "upon" the front windshield required placement on or in direct contact with the windshield, and that an object hanging, even in close proximity, does not violate the statute. The Alaska Municipal Code section contains some additional language which prohibits "non-transparent material or an accumulation of snow, ice, or frost" which NRS 484D.435(1) does not. It also uses the additional terms "obscures, or impairs" after the word "obstructs". However, these differences are not material. The Ninth Circuit's holding interpreting the Alaska Municipal Code section make it clear that hanging an item from a rearview mirror does not violate a statute like NRS 484D.435(1) because the statute requires an obstruction to be on or indirect contact with the windshield. The court must therefore determine whether the officers' mistake of law requires suppression.

### III.    Reasonable Mistake of Law.

In cases decided prior to *Heien v. North Carolina*, the Ninth Circuit had held that if "an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment." *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000); *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000). In *King*, the Ninth Circuit addressed, in a case of first

impression, whether an officer's mistake of law about a statute that has not been interpreted by the courts could support a finding of reasonable suspicion.  It held that even though the officer acted reasonably and his interpretation of the traffic law was reasonable, his mistaken belief that the defendant's conduct violated the law could not form the basis for reasonable suspicion to initiate the traffic stop.  As such, suppression was required.

In *Heien v. North Carolina*, 474 U.S. __ 135 S.Ct. 530 (2014), the Supreme Court accepted certiorari to decide whether an officer's reasonable mistake of law could support reasonable suspicion necessary to uphold a traffic stop under the Fourth Amendment.  ("The question here is whether reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition.")  135 S.Ct. at 536.  Reiterating that the ultimate touchstone of the Fourth Amendment is reasonableness, the Supreme Court held that an officer's reasonable mistake of law could support a finding of reasonable suspicion to conduct a lawful seizure under the Fourth Amendment.  *Id.*  *Heien* held that if it was "reasonable for an officer to suspect that the defendant's conduct was illegal . . . there was no Fourth Amendment violation in the first place."  *Id.,* at 539.

The Supreme Court emphasized that an officer's mistake of law must be objectively reasonable and that the subjective understanding of the particular officer is irrelevant.  *Id.*, citing *Whren v. United States*, 517 U.S. at 813.  Additionally, the Supreme Court stressed that the court's objective reasonableness inquiry "is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation."  *Id.*  Because the traffic code violation supporting the stop in *Heien* had not been previously construed by North Carolina's appellate courts, and the North Carolina courts had disagreed on the statute's appropriate interpretation, the Supreme Court concluded that it was objectively reasonable for the officer to believe the faulty right break light he observed was a violation of North Carolina law.  Because this mistake of law was objectively reasonable, the officer had reasonable suspicion to conduct the traffic stop which developed the evidence resulting in Heien's conviction for attempted trafficking in cocaine by transporting and possession.

1    Here, both officers testified that they believed an item hanging from the rearview mirror

2  violated NRS 484D.435(1).  However, the court finds that the officers' belief was not objectively

3  reasonable in light of the Ninth Circuit's holding in *King* that a nearly identical statute did not

4  proscribe an item hanging from a rearview mirror.  *King* was decided in 2001, thirteen years

5  before this traffic stop.  Where, as here, the Ninth Circuit has interpreted a virtually identical

6  statute, the officers' mistake of law is not objectively reasonable.  The officers' subjective

7  understanding of the law is irrelevant and "the government cannot defend an officer's mistake in

8  legal interpretation on the ground that the officer was unaware of or untrained in the law."

9  *Heien,* 135 S.Ct. at 541, (Kagan, concurring).

10                                          **CONCLUSION**

11    A stop for a suspected traffic violation is a seizure for purposes of the Fourth Amendment

12  which must be supported by reasonable suspicion.  For the reasons explained, the court finds that

13  the officers lacked reasonable suspicion to conduct a traffic stop of the vehicle in which Sanders

14  was a passenger.  Because Sanders was seized in a traffic stop without reasonable suspicion, the

15  officers' subsequent observations of furtive movements and an odor of marijuana emanating

16  from the vehicle cannot contribute to reasonable suspicion for the initial stop.  Thirteen years

17  prior to this stop, the Ninth Circuit had construed a statute remarkably similar to NRS

18  484D.135(1) finding that an object hanging from a rearview mirror was not a violation of a

19  nearly identical Alaska Municipal Code section.  Accordingly, the officers' mistaken belief that

20  the statute prohibited air fresheners from hanging from a rearview mirror cannot support

21  reasonable suspicion for this stop.

22    Accordingly,

23    **IT IS RECOMMENDED** that Sanders' Motion to Suppress (Dkt. #15) be **GRANTED**.

24    Dated this 27th day of February, 2015.

25

26    Peggy A. Leen

27    United States Magistrate Judge

28

                                              - 16 -